O

JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARYUM MNASAKANYAN, an individual, | Case No. 18-cv-10376 DDP (JCx) |
| Plaintiff, | **ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT** |
| v. | [Dkts. 43, 44] |
| CHARLES L. BECK, DAN MYERS, AMY ASHVANIAN, JIM MCDONNELL, DR. MARVIN SOUTHARD, DR. STEPHEN SHEA, DR. PHUONG TRUONG, JACKIE LACEY, JONATHAN CHUNG, CITY OF LOS ANGELES, LOS ANGELES COUNTY and DOES 1-10, inclusive, | |
| Defendants. | |

Presently before the court are Defendant County of Los Angeles and Defendant City of Los Angeles' Motions for Summary Judgment. (Dkts. 43, 44.) Having considered the submissions of the parties and heard oral argument, the court grants Defendants'

motions and adopts the following order.

**I. BACKGROUND**

Plaintiff Maryam Mnasakanyan ("Plaintiff") brings this action against the County of Los Angeles ("County"), the City of Los Angeles ("City"), and other individuals following the April 1, 2018 suicide of Plaintiff's husband, Albert Harutyunyan, aka Albert Tersargyan ("Decedent"), while an inmate at Men's Central Jail ("MCJ"). (*See* Dkt. 13, First Amend. Compl. ¶¶ 5-16 ("FAC"); Dkt. 44-4, Shepherd Decl. ¶ 2.) Decedent was in the custody of the Los Angeles County Sheriff's Department from approximately April of 2010 until his death. (*See* Dkt. 43-4, Guy Decl. ¶ 3; Dkt. 44-4, Shepherd Decl. ¶ 2.) At the time of his death, Decedent was on trial for four murders—Decedent was 81 years old. (Dkt. 44-4, Shepherd Decl. ¶ 2.)

A portion of Decedent's relevant mental health treatment prior to his death was as follows: In April of 2010, Decedent had an initial mental health evaluation in which he denied suicidal ideation, denied a history of suicide attempt, and did not appear manic psychotic or depressed. (Dkt. 43-4, Guy Decl. ¶¶ 3, 7, 11.) From January 2017 to March 2018, Decedent was treated on numerous occasions for the working diagnoses of PTSD/depression and was receiving medication; Decedent complained of hearing voices but denied being suicidal. (Dkt. 43-5, Ahmadpour Decl. ¶¶ 4-6; Dkt. 43-6, Smith Decl. ¶ 9.) In June of 2017, Decedent was admitted to the Correctional Treatment Center and was diagnosed with self-care deficit related to Alzheimer's disease; Decedent remained there until August 2, 2017, at which time he was moved back to MCJ. (Dkt. 43-7, Teophilov Decl. ¶¶ 27, 29, 30.) From August 3, 2017 to March 23, 2018 Decedent was evaluated and treated on approximately five occasions. (Smith-White Decl. ¶¶ 5-9; *see* Dkt. 43-2, Kelly Decl., Ex. A.) Dementia was Decedent's working diagnosis until his death. (*Id.* ¶ 31.)

On March 23, 2018, about a week before Decedent's death, Decedent was again evaluated and treated. (Dkt. 43-6, Smith Decl. ¶ 9.) Decedent continued to complain of

2

visual and auditory hallucinations but expressed no suicidal ideation. (*Id.*) In the twenty-seven hours preceding Decedent's death, Sheriff Deputies conducted staggered checks on Decedent's cell every 30 minutes in compliance with California Code of Regulations Title 15. (Dkt. 43-8, Kennedy Decl. ¶¶ 3, 8-9.)

On April 11, 2018, Plaintiff filed a Government Claim related to Decedent's death with the County of Los Angeles Board of Supervisors. (Dkt. 43-2, Kelly Decl., Ex. A, B.) The County rejected Plaintiff's Government Claim on May 29, 2018. (*Id.*) On March 21, 2019, Plaintiff filed the First Amended Complaint against the County, City, and other individuals alleging federal and state causes of action. (Dkt. 13, FAC.) Plaintiff raised several federal and state causes of action. (*Id.*) The County and City now move for summary judgment as to all claims. (Dkts. 43, 44.)

## II. LEGAL STANDARD

Summary judgment is appropriate where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). All reasonable inferences from the evidence must be drawn in favor of the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). If the moving party does not bear the burden of proof at trial, it is entitled to summary judgment if it can demonstrate that "there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 323.

Once the moving party meets its burden, the burden shifts to the nonmoving party opposing the motion, who must "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. Summary judgment is warranted if a party

3

"fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. A genuine issue exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and material facts are those "that might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. There is no genuine issue of fact "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

It is not the court's task "to scour the record in search of a genuine issue of triable fact." *Keenan v. Allan*, 91 F.3d 1275, 1278 (9th Cir. 1996). Counsel have an obligation to lay out their support clearly. *Carmen v. San Francisco Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001). The court "need not examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposition papers with adequate references so that it could conveniently be found." *Id.*

**III. DISCUSSION**

    **A. Section 1983: Claims 1-3**

As an initial matter, the court notes that the only defendants in this action are the County and City. There are no individual defendants in this action—it appears that the individual defendants were not served. (*See* Dkt.; dkt. 43-6, Smith Decl. ¶ 9.) Plaintiff's Section 1983 claims against the County and the City are based on theories of policy and practice of deliberate indifference to serious medical needs, subjecting inmates to inadequate medical treatment where the County and City are aware that the inmate has a serious medical condition, and failure to train and supervise. (*See* FAC.)

Section 1983 provides, in pertinent part, "[e]very person who, under color of any statute . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." 42

4

U.S.C. § 1983.  "[A] person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, 'if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'" *Preschooler II v. Clark Cty. Sch. Bd. of Trs.*, 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978)).  Municipalities and other local government units can also be held liable under Section 1983.  *Monell v. Dept of Soc. Servs.*, 436 U.S. 658, 691 (1978).  However, "a municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words . . . on a respondeat superior theory." *Id*. at 691.  Rather, a plaintiff must establish that the constitutional violation was caused by "a policy, practice, or custom of the entity." *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011).  The "first inquiry in any case alleging municipal liability under § 1983 is the question whether there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989).  "[T]he inadequacy of police training may serve as the basis for § 1983 [municipal] liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *Id.*

To establish municipal liability, Plaintiff must make a two-fold showing: First, Plaintiff must establish an underlying constitutional violation, and second, Plaintiff must establish that a policy, practice, or custom was the moving force behind the constitutional violation. *See City of Canton*, 489 U.S. at 385; *Dougherty*, 654 F.3d at 900.  As to an underlying constitutional violation, Plaintiff puts forth evidence that in April 2016—two years prior to Decedent's suicide—County and City agents received information from an informant that Decedent intended to commit suicide if Decedent ever went to trial. (Dkt. 56, Bakari Decl., Ex. B at 26, 54.)  According to Plaintiff, the County and City agents had a duty to report the information to the "appropriate person" and the failure to report the information caused a deprivation of medical treatment to a serious medical need.  (Opp.

5

at 3.) Viewed in the light most favorable to Plaintiff, and assuming the admissibility of the evidence, an issue the court need not decide here, this evidence may be sufficient to establish the individual agents' duty to report Decedent's suicidal statements. However, there is no evidence establishing whether the County and City agents did or did not communicate the information to the appropriate officials. At trial, Plaintiff would have the burden of establishing that the individual agents *did not* communicate this information.

Assuming that the individual agents failed to report Decedent's statements of intent to commit suicide should trial occur, Plaintiff would also have the burden of establishing that, had the County had this information, Decedent's mental health treatment would have been different or that Decedent's placement within the jail would have been different. The undisputed evidence shows that Decedent received consistent mental health treatment and denied suicidal ideation from January 2017 to March 2018— a week before his death. (*See* Dkt. 43-5, Ahmadour Decl. ¶¶ 4-6; Dkt. 43-7, Teophilov Decl., Dkt. 43-6, Smith-White Decl.) It is also undisputed that in the twenty-seven hours prior to his death, County Sheriffs duly conducted Title 15 safety checks. (Dkt. 43-8, Kennedy Decl., Exs. A, B.) Plaintiff has failed to put forth any evidence, such as expert testimony, showing that information of Decedent's statements in April 2016 would have made a difference in medical treatment.

Plaintiff also appears to argue that Decedent's self-reports to his mental health providers—that he did not have suicidal ideation—was false and is evidenced by the fact that Decedent committed suicide and by the information individual agents received in 2016. Plaintiff fails to explain how Decedent's conduct of falsely denying suicidal ideation could support a finding that *Defendants* were deliberately indifferent to Decedent's serious medical needs. As noted above, the only evidence in the record demonstrates that Decedent received ongoing medical treatment from 2017 to 2018. Plaintiff has not put forth any evidence demonstrating that Decedent was inadequately

6

treated. Accordingly, Plaintiff has failed to put forth evidence for trial demonstrating that the mental health treatment Decedent received was inadequate in light of Decedent's statements in April 2016.[1]

Assuming that Plaintiff could establish an underlying constitutional violation, Plaintiff's Section 1983 claims against the County and the City nonetheless fail because Plaintiff has not put forth any evidence establishing that a County or City policy, practice, or custom caused a deprivation of Decedent's constitutional rights. *See Pierce v. Multnomah Cty., Or.*, 76 F.3d 1032, 1039 (9th Cir. 1996); *see also Castro v. Cty. of Los Angeles*, 833 F.3d 1060, 1075 (9th Cir. 2016) ("The custom or policy must be a 'deliberate choice to follow a course of action . . . made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question."). A single act of a constitutional violation is generally not sufficient to establish a policy, practice, or custom unless there is evidence that the person who allegedly violated plaintiff's rights had "policymaking authority" or "evidence of a policy or custom otherwise that amounted to a deliberate indifference . . . ." *Levine v. City of Alameda*, 525 F.3d 903, 907 (9th Cir. 2008). There is no such evidence here. Indeed, the only evidence Plaintiff appears to have for trial is the informant's statements made to County and City individual agents. Plaintiff has no evidence of any policy, practice, or custom that was a moving force behind the alleged constitutional violation. Plaintiff has also not set forth evidence establishing that a deficiency in training or that a deficient training program caused the alleged deliberate indifference to Decedent's serious medical needs. *See City of Canton*, 489 U.S. at 391.

---

[1] Plaintiff also fails to present evidence that the City had custody of Decedent at any relevant time prior to Decedent's death. For this additional reason, the court concludes that summary judgment in favor of the City is appropriate.

7

The court concludes that there is an absence of evidence supporting Plaintiff's Section 1983 claims on which Plaintiff has the burden at trial. *See Celotex*, 477 U.S. at 323. The court grants summary judgment in favor of the County and the City as to the Section 1983 claims.

**B. Negligence & Wrongful Death: Claims 4 and 7**

Next, there is no genuine dispute of material fact supporting Plaintiff's negligence and wrongful death claims against the County and the City. As an initial matter, Plaintiff has not identified a statutory basis for the entities' direct liability for negligence. Cal. Gov't Code § 815 ("Except as otherwise provided by statute: (a) A public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person . . . ."). Assuming Plaintiff's theory is one of vicarious liability, Plaintiff has failed to present sufficient evidence of an employee's duty, breach, and, as discussed above, evidence demonstrating causation. *Hayes v. Cty. of San Diego*, 57 Cal. 4th 622, 629 (2013) ("[I]n order to prove facts sufficient to support a finding of negligence, a plaintiff must show that the defendant had a duty to use due care, that he breached that duty, and that the breach was the proximate or legal cause of the resulting injury." (citations omitted)). As to the City, Plaintiff failed to comply with the Government Tort Claim Requirement and has provided no evidence demonstrating that the City had custody of Decedent. During the eight years prior to his death, Decedent was solely in the custody of the County. Accordingly, there is no triable issue of fact as to Plaintiff's negligence claims against the County and City.

Because Plaintiff has no evidence creating a genuine issue of fact for trial as to any tort cause of action, Plaintiff's wrongful death claim similarly fails. *See Lopez v. City of Los Angeles*, 196 Cal. App. 4th 675, 685, 126 Cal. Rptr. 3d 706, 714 (2011) ("The elements of a cause of action for wrongful death are a tort, such as negligence, and resulting death.").

///

///

8

### C. California Gov't Code § 845.6, California Unruh Act, Americans with Disability Act, and The Rehabilitation Act: Claims 5 and 6

Assuming Plaintiff complied with the Government Tort Claims Act, Cal. Gov't Code § 910 *et seq.*, (*see* dkt. 43-2, Ex. A), and properly had exhausted remedies under the Prison Litigation Reform Act, 42 U.S.C. § 1997(e), Plaintiff has nonetheless failed to provide sufficient evidence to establish the elements of her fifth and sixth causes of action for which she will have the burden at trial. As discussed above, Plaintiff has failed to put forth evidence establishing a failure to provide mental health care. Plaintiff has also not put evidence demonstrating that the County failed to provide Decedent access to mental health programs and services, or otherwise failed to accommodate Decedent. *See McGary v. City of Portland*, 386 F.3d 1259, 1265 (9th Cir. 2004) (elements of an ADA claim include showing that plaintiff was "was either excluded from participation in or denied the benefits of the public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and [ ] such exclusion, denial of benefits, or discrimination was by reason of his disability." (citations and alterations omitted)); *Duvall v. Cty. of Kitsap*, 260 F.3d 1124, 1135 (9th Cir. 2001), as amended on denial of reh'g (Oct. 11, 2001) (claim under the Rehabilitation Act requires showing, in part, that plaintiff "was denied the benefits of the program solely by reason of his disability").

///
///
///
///
///
///
///
///
///

## IV. CONCLUSION

For the reasons stated above, the court grants the County's and the City's motion for summary judgment as to all claims. This action is hereby dismissed. Each party shall bear their own costs.

**IT IS SO ORDERED.**

Dated:   May 5, 2021

_____

DEAN D. PREGERSON

UNITED STATES DISTRICT JUDGE